UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA BRUNER,                              Case No.  15-10521

             Plaintiff,                     George C. Steeh
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge
             Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 20, 21)

**I.    PROCEDURAL HISTORY**

    A.    <u>Proceedings in this Court</u>

On February 10, 2015, plaintiff Gloria Bruner, filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt.1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George C. Steeh referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3).  On January 5, 2016, the case was subsequently reassigned to the undersigned pursuant to Administrative Order.  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 20, 21).

B.     Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on April 13, 2012. (Tr. 140-41). The same day, plaintiff filed a claim for social security income benefits. (Tr. 134-39). In both applications, plaintiff alleged disability beginning March 1, 2012. The claims were initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on August 8, 2012. (Tr. 60-61). Plaintiff requested a hearing and on July 16, 2013, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Jerome B. Blum, who considered the case de novo. (Tr. 36-39). In a decision dated October 4, 2013, the ALJ found that plaintiff was not disabled. (Tr. 30). Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 28, 2015, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

The claimant previously filed concurrent applications, alleging an onset date of January 15, 2010, which were both denied by way of an unfavorable decision issued by ALJ David A. Mason on March 23, 2012. (Tr. 40-59). ALJ Mason's decision was not appealed and remains final and binding on ALJ Blum.[1] As noted

---

[1]  ALJ Blum noted the prior decision and his responsibility to adhere to the principles set forth in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). *See also Lennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990); SSR 98-4(6). ALJ

2

by ALJ Blum, the current alleged onset date overlaps the prior decision by several weeks, however, the claimant, through her representative, admits that "the only relevant time period to consider herein is from March 24, 2012 forward." (Tr. 185-86).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born on November 2, 1969 and was 42 years of age as of her alleged disability onset date and 43 years old at the time of the administrative hearing. (Tr. 28; *see also* Dkt. 20, Pg ID 1161). Plaintiff's most recent work history included work as a dispatcher. (Tr. 28). The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since March 1, 2012, the alleged onset date. (Tr. 19). At step two, the ALJ found that plaintiff has the following severe

---

Blum determined that plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. As such, and as discussed more fully herein, ALJ Blum concluded that there was no justification in finding a lesser RFC than previously determined by ALJ Mason. (Tr. 25).

impairments: history of multiple sclerosis and depression secondary to general medical condition; and lumbar disc protrusions at L4-L5 and L5-S1. (Tr. 20). The ALJ then concluded that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id*.) As such, the ALJ found that the claimant had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except claimant has the RFC to perform unskilled, sedentary work as defined in 20 CFR 404.1567(a) and 20 CFR 404.156X(a), with the following limitations: occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but no climbing of ladders, ropes, or scaffolds. She needs to alternate between sitting and standing as necessary, and should avoid concentrated exposure to extreme heat, humidity, excessive vibration, and unprotected heights. Additionally, she should not operate or control moving machinery. She is also limited to simple, 1-2 step tasks that are routine and repetitive in nature. Lastly, she can have only occasional contact with the general public, co-workers, and supervisors.

(Tr. 24). The ALJ next determined that claimant could not perform any of her past relevant work. (Tr. 28). The ALJ concluded that considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 28). As such, the ALJ concluded that plaintiff has not been under a disability from March 1, 2012, through the date of his decision. (*Id*.)

B.    Plaintiff's Motion for Summary Judgment

1.    Step Two Determination

Plaintiff argues that the ALJ failed to consider the totality of her physical and mental impairments and, as a result, substantial evidence does not support the denial of benefits.  20 C.F.R. 416.920(e), 20 C.F.R. 916.945; SSR 96-8p.  (Dkt. 20, at Pg ID 1165)  Here, the ALJ only recognized the severe impairments of multiple sclerosis, depression secondary to general medical condition and lumbar disc protrusions at L4-5 and L5-S1.  (Tr. 75)  Plaintiff complains, however, that the ALJ discounted her severe urinary incontinence, GERD, hypertension, fibromyalgia, and morbid obesity.  Specifically, plaintiff complains that the ALJ incorrectly stated that the record contained no evidence of trigger points to establish a diagnosis of fibromyalgia.  Plaintiff points to the records of her Board certified neurologist, Dr. Vaqua K. Siddiqui, who stated:

> Assessment and Plan:
>
> 1. Ongoing neck and back pain with radiation. She has multiple tender spots.  She appeared to have fibromyalgia along with radiculopathy and spinal spondylosis.  She has severe pain.  She appeared to have radiculopathy.
>
> 2. We will continue with the Vicodin.
>
> 3. She has multiple sclerosis.  Her neuro exam otherwise appear stable.  Her pain may be related to multiple sclerosis as well.  She will be continued on Copaxone.

5

>    4. She reported having severe insomnia related to anxiety
>    and depression.  We will continue with the Temazepam.
>
>    5. She has depression. She appeared to have
>    posttraumatic stress syndrome as well.  She is advised to
>    see psychiatrist. She is advised to follow up in 6 weeks.

(Dkt. 20, at Pg ID 1168, *citing* Dkt. 13-8, Pg ID 469) (emphasis added).  Plaintiff

claims that Dr. Siddiqui defined her condition as severe.  Moreover, her

overlapping diagnoses (e.g., TIA/stroke, multiple sclerosis, and fibromyalgia) all

cause similar symptomatology, nevertheless plaintiff argues that her symptoms are

disabling beyond a simple adding of these impairments.

### 2. Treating Source Rule

The ALJ contends that claimant's statements concerning the intensity,

persistence and limiting effects of her symptoms are not credible; however,

plaintiff argues that the ALJ's position ignores plaintiff's treating neurologist, Dr.

Siddiqui, who noted that she has severe pain in her neck and back with radiation,

problems with memory and dizziness, muscle spasms, pain in her hands and arms,

remitting multiple sclerosis with increasing symptoms, ongoing neck and back

pain of a severe nature, neck and back pain with radiation and fibromyalgia with

multiple tender spots.  (Tr. 469, 470).  Plaintiff contends that the ALJ has violated

the treating source rule which requires ALJs to give controlling weight to the

treating source.

6

3.      GAF Scores

Plaintiff also argues that the ALJ erred when he rejected the severity of her

depression.  Plaintiff outlines the history of her depression, feelings of

helplessness, worthlessness, absence of energy or motivation together with suicide

attempts and continued suicidal thoughts.  (Tr. 1173).  At several dates during

2012, plaintiff was given a GAF score of 50, which reflects "serious symptoms

(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any

serious impairment in social, occupational, or school functioning (e.g., no friends,

unable to keep a job).  (Tr. 472, 585, 590, 602, 606, 610).  With this consistency in

GAF scores, plaintiff contends that a far more specific analysis was required by

the ALJ than issuing a superficial comment about GAF scores merely being a

"snapshot in time" and therefore not providing any valuable or probative

information.

4.      Credibility

Plaintiff also contends that the ALJ failed to properly assess her credibility.

The ALJ determined that claimant performs daily tasks and/or weekly tasks

around the house, laundry, washing dishes, lawn care and snow removal.  (Tr. 77).

However, plaintiff contends that she shares these tasks with her sister.  (*Id*.)

Moreover, plaintiff states that she shops as needed and asks others for assistance

when her back hurts.  (*Id*.)  Plaintiff points out that these activities do not establish

her ability to work on a full-time, sustained basis five days per week, eight hours per day.

Plaintiff states that she has attempted to work in spite of a lifetime of sexual, verbal and physical abuse. No physician in the record has indicated that plaintiff can sustain full-time competitive work. Plaintiff seeks remand for payment and/or a new hearing so that her combination of impairments can be re-evaluated.

### C. The Commissioner's Motion for Summary Judgment

#### 1. Step Two Determination

The Commissioner contends that the ALJ properly evaluated the totality of plaintiff's impairments, therefore, there was no Step Two error. (Dkt. 21, at Pg ID 1184). Pursuant to the regulations, a severe impairment is a physical or mental impairment or a combination of impairments that significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.152(c), 416.92(c). The regulations additionally state that basic work activities include the following: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers, and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). In establishing the

presence of a severe, medically determinable impairment, however, plaintiff bears the burden of providing medical evidence that demonstrates the severity of her condition. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); SSR 85-28, 1985 WL 56856, at *3.

Here, the ALJ determined that plaintiff had the following severe impairments: multiple sclerosis, depression secondary to general medical conditions and lumbar disc protrusions at L4-5, and L5-S1. (Tr. 20). The ALJ determined that plaintiff's incontinence and/or neurogenic bladder was a non-severe impairment. (*Id*.) The ALJ also noted that plaintiff had been diagnosed with GERD, hypertension, and fibromyalgia. (*Id*). The ALJ indicated that while plaintiff had been diagnosed with fibromyalgia, there was no evidence of trigger point findings that would definitively establish fibromyalgia as a severe impairment. (*Id*.) The ALJ noted that plaintiff had been prescribed Lyrica, Abilify, and Cymbalta for treatment of her fibromyalgia and depression, and the ALJ factored these two impairments into the RFC determination. (Tr. 20, 506-18, 731-41, 758-972, 1005-33).

While plaintiff argues that the ALJ failed to adequately consider Dr. Siddiqui's records, specifically the tender points during an April 2012 examination, that medical report fails to definitively demonstrate that plaintiff's fibromyalgia was a severe impairment. The Commissioner argues that pursuant to

SSR 12-2p, the presence of tender points only establishes that fibromyalgia is a medically determinable impairment, not a severe impairment. SSR 12-2p, 2001 WL 3104869, at *3. "The mere diagnosis of [a condition] . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (internal citation omitted).

Moreover, the Commissioner agues that the ALJ specifically stated that he considered plaintiff's fibromyalgia in determining her RFC (Tr. 20, 26; *citing* Tr. 566-580, 655-671), and thus any failure to find the impairment severe at step two does not warrant a remand. *See Fisk v. Astrue*, 253 F. Appx 580, 584 (6th Cir. 2007) (*quoting Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244 (6th Cir. 1987)) ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two."). Plaintiff also notes that Dr. Siddiqui defined her fibromyalgia as "severe", however, the Commissioner contends that Dr. Siddiqui's notes are not definitive on this point. (Tr. 408). Moreover, the only evidence that plaintiff had to support her claim that her fibromyalgia was disabling was Dr. Siddiqui's April 2012 examination report, which at most establishes that plaintiff was diagnosed with fibromyalgia and that the condition was a medically-determinable impairment. (Tr. 408). Plaintiff was also not able to prove that the presence of tender points

caused significant limitations in her physical or mental ability to perform basic work activities.  According to the Commissioner, plaintiff has simply failed to carry her burden of demonstrating that her fibromyalgia was a severe impairment, or  that she was disabled due to her condition.

### 2. Treating Source Rule

The Commissioner argues that plaintiff has not shown that the ALJ impermissibly discounted Dr. Siddiqui's notes.  First, the majority of records that plaintiff references in support of her argument pertain to the period adjudicated by ALJ Mason and, as noted above, those records are not relevant to this court's inquiry.  (Tr. 40-55, 403-407).  Moreover, the Commissioner contends that the remaining, relevant notes demonstrate that Dr. Siddiqui did not provide an opinion on plaintiff's functioning, thus there was no opinion for the ALJ to evaluate.  (Tr. 408).  The Commissioner indicates that the April 2012 notes provide that plaintiff was experiencing stiffness in her back with multiple tender spots, her straight leg raise was positive, she was alert and oriented to three spheres, her speech was normal, she appeared depressed, her recent memory was impaired, her sensation was decreased in her feet, her gait was slightly unsteady on tandem gait, and there was no clear focal weakness.  (*Id*.)  Dr. Siddiqui concluded that plaintiff was experiencing pain that could be related to radiculopathy, multiple sclerosis, or fibromyalgia.  (*Id*.)  The following month, Dr. Siddiqui's treatment notes reached

11

similar findings, and he determined that plaintiff's pain was related to her radiculopathy. (Tr. 409). Dr. Siddiqui's diagnoses were generally adopted by the ALJ except for the finding on fibromyalgia; however the ALJ considered plaintiff's fibromyalgia in crafting the RFC. (Tr. 20-21, 25-27).

### 3.    GAF Scores

The Commissioner indicates that the ALJ evaluated plaintiff's GAF scores at step three, noting that plaintiff's representative argued that her GAF scores were evidence that she could not engage in substantial gainful activity. (Tr. 22). With respect to plaintiff's GAF scores of 50, the ALJ noted that while they were indicative of serious symptoms, they are reflective of a clinician's judgment on a individual's level of functioning and "represent[] the general characterization of a person's mental health, not a rating of their ability to work" (Tr. 22). The ALJ also noted that plaintiff's therapist stated in April 2013 that her facility did not evaluate a patient's ability to work or perform vocational assessments. (Tr. 22, 730). The ALJ's assessment of the GAF scores in this case is supported by substantial authority. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006) (the GAF score was also intended to make treatment decisions, and may have little to no bearing on a claimant's occupational functioning). Further, the Sixth Circuit has held that a GAF score of 50 is not necessarily evidence of disability. *Keeler v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 472, 474

(6th Cir. 2013) ("Further, the ALJ was not required to consider Keeler's GAF scores, and, in any case, the scores [50 and 52] were not sufficient to undermine the ALJ's analysis") (citations omitted); *DeBoard v. Comm'r of Soc. Sec*., 211 Fed. Appx. 411, 415 (6th Cir. 2006) ("Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower.")

Here, plaintiff has not shown that her provider, by assigning a GAF of 50, was giving an opinion that she was disabled or could not work.  To the contrary, her therapist, Ms. Fisher, indicates that her facility did not evaluate vocational assessments.  (Tr. 22, 730).  The Commissioner contends that the ALJ provided a comprehensive analysis of why he did not credit the GAF scores.

### 4.    Credibility Findings

The Commissioner contends that the ALJ did not err in discounting plaintiff's credibility.  Indeed, the ALJ considered plaintiff's allegations of pain, and provided appropriate rationale for the conclusion that her subjective complaints were not entirely credible.  First, the ALJ noted that plaintiff's back pain was intermittent and worse during the winter, she took appropriate pain medication, her MRIs did not show any disc herniations, and her neurological follow-ups were generally stable (Tr. 25-26; *citing* Tr. 566-80, 655-71).  The ALJ next noted that while plaintiff experienced flare-ups of multiple sclerosis, her

13

physical findings were generally unremarkable, her weakness and other symptoms resolved with appropriate treatment, she did not require long-term hospitalizations or ongoing therapy, her MRIs revealed that there had been no progression of her lesions, her neurological examinations were generally intact, her symptoms did not cause motor function deficits, and there was no report of muscle atrophy or rigidity in her follow-up examinations.  (Tr. 26; *citing* Tr. 456-505, 581-654, 693-722, 731-741, 758-972, 1002-1004). The ALJ also noted that there was no increase in the frequency or duration of plaintiff's emergency room visits or hospitalizations since the prior hearing decision (Tr. 449-654, 672-722, 731-741, 758-972, 1015-1033), her treatment was generally effective (Tr. 1002-1033), her multiple sclerosis flare-ups resolved through treatment with steroids, and her other symptoms improved with medication (Tr. 26; *citing* Tr. 1005-1008). The ALJ further noted that while plaintiff indicated that she used a cane, which was prescribed by her physician (Tr. 169); there was no evidence that she was required to use a cane, or that she had been observed ambulating with a cane (Tr. 26; *citing* Tr. 731-741, 1030).  The ALJ added that while plaintiff's impairments required episodic treatment, they resolved with appropriate treatment, and therefore, her complaints were only partially credible.  (Tr. 27).  The ALJ additionally noted that plaintiff's credibility was compromised by the facts that:  (1) she fraudulently obtained state assistance (Tr. 725), (2) she received an out-of-work note for

14

September 27, 2012, after her alleged onset date (Tr. 597), and (3) no physician placed any restrictions on her functioning. (Tr. 27-28). For these reasons, the Commissioner contends that the ALJ properly discounted plaintiff's credibility here.

The Commissioner also notes that the ALJ's discussion of plaintiff's daily activities was a part of his analysis of plaintiff's mental impairments at step three. (Tr. 22). Specifically, at step three, the ALJ evaluated plaintiff's impairments under Listing 12.04 and concluded that she had mild restrictions in daily activities, as the limitations she described consistently related to her physical and not her mental activities. (Tr. 21-23, *citing* Tr. 163-170). As such, the Commissioner argues this evidence was not used to discount plaintiff's credibility or to determine that she could return to full-time work.

In conclusion, the Commissioner states that there are medical opinions in the record that support a finding that plaintiff can engage in full-time work, including opinions from the state agency medical and psychological consultants (Tr. 69-71, 73), opinions from the consulting physician (Tr. 995-1000), and psychologist (Tr. 985-988), and Dr. Batah's determination that plaintiff could return to work on September 28, 2012. (Tr. 597). For all of these reasons, the Commissioner argues that the ALJ's determination should be upheld.

D.    Plaintiff's Reply Brief

Plaintiff reiterates her position that the ALJ cannot rely on speculation and conjecture to determine plaintiff's ability to work.  By this, plaintiff asserts that Dr. Siddiqui established that she had multiple tender points, yet the ALJ determined that her fibromyalgia was not severe.  The ALJ did determine that plaintiff had objective evidence to confirm disc protrusion, therefore, plaintiff had objective evidence of radiculopathy as outlined in Dr. Siddiqui's assessment.  In other words, the symptomatology as outlined by plaintiff is consistent with the objective evidence contained in the record.

Plaintiff also restates that the regulations require, unless good reasons are given, that controlling weight be given to a treating source.  Plaintiff is particularly troubled by the fact that the ALJ never addressed the fundamental question of whether she could sustain work for eight hours a day, five days a week not missing over two days per month as required by the regulations.  Essentially plaintiff claims that the ALJ "cherry-picked" through the record to identify times when plaintiff was able to perform limited activities, rather than provide a longitudinal overview of her functional limitations.  Plaintiff says that picking her "good days" is a violation of SSR 96-8p, and is not enough to provide substantial evidence to support the ALJ's conclusion.  Finally, plaintiff argues that her GAF scores should be given more weight than the Commissioner suggests.

16

## III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

17

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . .

consider the credibility of a claimant when making a determination of disability.");

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's

credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and

credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting

credibility to a certain degree is appropriate where an ALJ finds contradictions

among medical reports, claimant's testimony, and other evidence."). "However,

the ALJ is not free to make credibility determinations based solely upon an

'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

19

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

  B.   Governing Law

  The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled. F. Bloch,

Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Legal Analysis

1.   Step Two Determination

Plaintiff argues that the ALJ failed to properly evaluate all of her

impairments.  Specifically, plaintiff argues that the ALJ did not, at step two of the sequential analysis, conclude that her fibromyalgia was a "severe" impairment.

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act...."  *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007).  A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or

handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. *See id.*

At step two of the sequential evaluation here, ALJ Blum determined that plaintiff had the following severe impairments: history of multiple sclerosis and depression secondary to general medical condition; and lumbar disc protrusions at L4-L5 and L5-S1. (Tr. 20). The ALJ noted that plaintiff also alleged urinary incontinence, GERD, hypertension, and fibromyalgia as disabling impairments. (*Id.*) Here, plaintiff only appears to be advancing an argument that the ALJ erred in not identifying her fibromyalgia as "severe" at step two. The ALJ acknowledged that fibromyalgia was "carried" as a diagnosis; however, no trigger points were indicated to definitively establish it as a severe impairment at step two. (*Id.*) The ALJ noted that plaintiff has been prescribed Lyrica, Cymbalta, and Abilify for treatment of both her fibromyalgia and depression and, importantly, noted that these conditions were factored into the RFC. (*Id.*; *citing* Exs. B9F, B23F, B29F-31F).

It is well established in Sixth Circuit precedent that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and therefore continued with the

24

five-step evaluation. *See*, *e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  The purpose of step two is "to screen out totally groundless claims."  *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576 (6th Cir. 2009).  If the ALJ continues with the remaining steps, any error at step two is harmless.  Therefore, because the ALJ here found the existence of severe impairments, and thus continued to the remaining steps of the sequential evaluation, any error at step two in failing to find plaintiff's fibromyalgia as severe is harmless.

2.    Treating Source Rule

Plaintiff also claims that the ALJ discounted the opinion of her treating physician, Dr. Siddiqui, regarding the disabling nature of her fibromyalgia.  An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "non-examining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "non-treating source").  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

An ALJ is required to evaluate every medical opinion of record, and set forth a valid basis for rejecting any.  20 C.F.R. § 404.1527; *see Shelman v.*

25

*Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant.  *See Lashley v. Sec'y*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Moreover, "in weighing medical evidence, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009)).  An ALJ may not substitute his [or her] own medical judgment for that of a treating or examining doctor where the opinion of that doctor is supported by the medical evidence.  *See Simpson*, 344 Fed. Appx. at 194;  *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings.");  *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at * 13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor."  *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).  This is so even though the final responsibility for the RFC

26

determination is an issue reserved to the Commissioner.  *Allen*, 2013 WL
5676254, at *15.

Plaintiff's primary argument is that the ALJ did not give proper weight to
her treating physician, Dr. Vaqar Siddiqui, when Dr. Siddiqui gave plaintiff a
diagnosis of fibromyalgia.  Plaintiff asserts that this diagnosis, either alone or in
combination with her other severe impairments, should have resulted in a finding
of disability.  However, this Circuit has made clear that the mere fact that a
plaintiff suffers from certain conditions or carries certain diagnoses does not
necessarily equate to disability or a particular RFC.  Rather, a claimant must also
prove its severity and functional impact.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th
Cir. 1988).  The residual functional capacity circumscribes "the claimant's
residual abilities or what the claimant can do, not what maladies a claimant suffers
from though his maladies will certainly inform the ALJ's conclusion about the
claimant's abilities."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.
2002).  "A claimant's severe impairment may or may not affect his or her
functional capacity to work.  One does not necessarily establish the other."  *Yang
v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004).  "The
regulations recognize that individuals who have the same severe impairment may
have different [residual functional capacities] depending on their other
impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217

Fed. Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).

Thus, in the instant case, although Dr. Siddiqui diagnosed plaintiff with "fibromyalgia," that alone is insufficient to establish a disability. *See Foster*, 853 F.2d at 489. The court finds significant that the ALJ throroughly considered Dr. Siddiqui's examination findings and concluded that despite plaintiff's diagnosis, plaintiff was capable of sedentary work. (Tr. 24). In support, the ALJ specifically noted that plaintiff's neurological exam follow-ups were generally stable and Dr. Siddiqui noted multiple tender points indicating that plaintiff "appeared to have fibromyalgia." (Tr. 26). However, given his potential diagnosis, Dr. Siddiqui did not provide an opinion that plaintiff was functionally limited in any way. At the same time, the ALJ also considered the opinion of a consultative examiner, who determined that plaintiff had no significant functional deficits. (*Id.*) In fact, the only positive finding was that plaintiff experienced some difficulty getting out of the squatting position, which the ALJ accommodated in the RFC by requiring only the occasional performance of postural activities such as bending, stooping, crouching, or crawling. (*Id.*) The ALJ also considered the records of additional treating physicians, yet none of the records contained any indications of restrictions placed on the claimant by her treating doctors. (Tr. 27). In fact, one of plaintiff's physician's, Dr. Fouad Batah, indicated that she could return to work following a two-day hospitalization for shortness of breath which revealed no

28

pulmonary or cardiac etiology.  (Tr. 28).  In contrast, there were medical opinions in the record that did support a finding that plaintiff could engage in full-time work, including assessments from the state agency medical and psychological consultants (Tr. 69-71, 73), opinions from the consulting physician (Tr. 995-1000), and psychologist (Tr. 985-988), and as previously mentioned, Dr. Batah's opinion (Tr. 597).

Based on the above, the undersigned concludes that the ALJ reasonably weighed Dr. Siddiqui's opinion and determined that his diagnosis of fibromyalgia did not preclude all work.

### 3.    GAF Scores

Plaintiff also argues that the ALJ erred in giving plaintiff's GAF scores in the 50's little weight, but the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) (citations omitted).  Accordingly, any decision to disregard the GAF scores is of little consequence and would not undermine a decision supported by substantial evidence.  *See Oliver v. Comm'r of Soc. Sec.*, 2011 WL 924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial

evidence in the record and noting that "GAF score is not particularly helpful by itself").

### 4.   Credibility

Plaintiff also argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible.  As the relevant Social Security regulations make clear; however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled."  20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations ... if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").  "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).

As the Sixth Circuit has held, determinations of credibility related to
subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to
observe the demeanor of the claimant 'is invaluable, and should not be discarded
lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.
1981) (citation omitted). Thus, an ALJ's credibility determination will not be
disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th
Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it
conflicts with medical reports, the claimant's prior statements, the claimant's daily
activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*,
127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other
symptoms is in issue, after the ALJ finds a medical condition that could
reasonably be expected to produce the claimant's alleged symptoms, he must
consider "the entire case record, including the objective medical evidence,
statements and other information provided by treating or examining physicians ...
and any other relevant evidence in the case record" to determine if the claimant's
claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186,
at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529. Consistency between the
plaintiff's subjective complaints and the record evidence "tends to support the
credibility of the [plaintiff], while inconsistency, although not necessarily
defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*,

409 Fed. Appx. 852, 863 (6th Cir. 2011).

As noted above, ALJ Blum was required to determine whether new and material evidence existed which would justify the finding of a lesser RFC than found by ALJ Mason in his March 23, 2012 decision.  Plaintiff alleged a worsening of her mental and physical conditions that warranted a change in circumstances and a finding of disability; however, ALJ Blum concluded that ALJ Mason's RFC continued to apply.  (Tr. 25).  Specifically, the ALJ concluded that the prior RFC continued to address plaintiff's limitations, despite the existence of the new evidence.  (*Id.*)  The undersigned has provided a comprehensive overview of the relevant, objective evidence *supra* at pp. 13-15.  The ALJ concluded that while claimant's impairments cause the need for episodic treatment, her complaints are resolved with appropriate treatment.  The ALJ, therefore, found plaintiff to be partially credible with regard to her complaints.  (Tr. 27).  The undersigned agrees that there is a lack of congruity between plaintiff's subjective complaints and the record evidence which tends to diminish plaintiff's credibility.  *See Kalmbach*, 409 Fed. Appx. at 863.

Plaintiff further complains that the ALJ discounted her credibility by assessing her activities of daily living, including laundry, washing dishes, lawn care, snow removal, and shopping.  (Tr. 22).  The Commissioner is correct in noting that the ALJ considered these activities in his step three analysis of the

32

sequential evaluation process.  (Tr. 21).  Specifically under Listing 12.04, the ALJ

determined that the plaintiff had mild restrictions in activities of daily living.  (Tr.

21-23).  As such, the undersigned agrees with the Commissioner that the ALJ did

not rely on plaintiff's activities to discount her credibility.  That said, an ALJ may

reasonably view such daily activities as inconsistent with subjective complaints of

disabling limitations. 20 C.F.R. § 404.1529(c)(3)(I); *see also Warner v. Comm'r of

Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (recognizing that in nearly all cases,

an evaluation of a claimant's daily activities is relevant to the evaluation of

subjective complaints and ultimately, to the determination of disability); *Heston*,

245 F.3d at 536 (an ALJ may consider claimant's testimony of limitations in light

of other evidence of claimant's ability to perform tasks such as walking, going to

church, going on vacation, cooking, vacuuming and making beds).  Thus, it would

not be inappropriate for the ALJ to consider plaintiff's activities of daily living as

one factor in assessing her credibility.

Also, the ALJ noted that plaintiff fraudulently obtained state assistance for a

minor child who was not living with her.  (Tr. 27; *citing* Ex. B17F).  The District

Court has held that it is proper to consider fraud-related charges when assessing a

claimant's credibility.  *See Allen v. Comm'r of Soc. Sec.*, 2015 WL 574910, at *18

(E.D. Mich. Feb. 11, 2015) (*citing Jackson v. Barnhart*, 2008 WL 1848624, at *11

(W.D.N.Y. Apr. 23, 2008) ("[P]lainiff's own admitted misrepresentation

concerning her educational background and her previous conviction for welfare fraud affect her credibility ...").  Thus, the court finds that the ALJ did not err in considering this factor in assessing plaintiff's credibility.

The ALJ also discussed the fact that there were no treatment records recommending work-related restrictions placed on the plaintiff by a treating doctor.  (Tr. 27).  The only note in the record that limited plaintiff from work was from Dr. Batah, indicating that plaintiff could return to work the day after a two-day hospitalization.  (*Id*).

Based on the foregoing, the undersigned finds no compelling reason to disrupt the ALJ's credibility findings here.

## IV.   RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 18, 2016                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 18, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>